**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) **PUBLIC - REDACTED VERSION** |
| Plaintiff, | ) |
| | ) C.A. No. 14-617-GMS |
| v. | ) |
| MITEK SYSTEMS, INC., JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A., | ) **JURY TRIAL DEMANDED** ) ) ▮▮▮▮▮▮▮▮▮▮▮ ) |
| Defendants. | ) ) |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) **PUBLIC - REDACTED VERSION** |
| Plaintiff, | ) |
| | ) C.A. No. 14-1142-GMS |
| v. | ) |
| BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., NCR CORPORATION and MITEK SYSTEMS, INC., | ) **JURY TRIAL DEMANDED** ) ) ▮▮▮▮▮▮▮▮▮▮▮ ) ) |
| Defendants. | ) ) |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) **PUBLIC - REDACTED VERSION** ) |
| Plaintiff, | ) |
| | ) C.A. No. 14-1143-GMS |
| v. | ) |
| CITIGROUP INC., CITIBANK, N.A., NCR CORPORATION and MITEK SYSTEMS, INC., | ) **JURY TRIAL DEMANDED** ) ) ▮▮▮▮▮▮▮▮▮▮▮ ) |
| Defendants. | ) ) ) |

| | |
|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., FISERV, INC. and MITEK SYSTEMS, INC., | ) ) ) ) |
| Defendants. | ) ) |

**PUBLIC - REDACTED VERSION**

C.A. No. 14-1144-GMS

JURY TRIAL DEMANDED

▮▮▮▮▮▮▮▮▮▮▮▮▮

## MITEK'S BRIEF IN SUPPORT OF ITS
## MOTION FOR ATTORNEYS' FEES AND EXPENSES

OF COUNSEL:

Naveen Modi
Phillip W. Citroen
PAUL HASTINGS LLP
875 15th Street NW
Washington, D.C. 20005
(202) 551-1700
naveenmodi@paulhastings.com
phillipcitroen@paulhastings.com

Mary B. Matterer (I.D. #2696)
Richard K. Herrmann (I.D. #405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

**ATTORNEYS FOR DEFENDANT
MITEK SYSTEMS, INC.**

DATED: SEPTEMBER 29, 2017

# TABLE OF CONTENTS

I.   INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS .............. 1

II.  STATEMENT OF FACTS ............................................................................................. 2

   A.   RMII's Baseless Allegations ........................................................................... 2

   B.   RMII's Litigation Conduct ............................................................................. 4

   C.   Plaintiff RMII .................................................................................................... 7

III.  ARGUMENT ................................................................................................................. 9

   A.   Mitek Is Entitled to Fees Under 35 U.S.C. § 285 ............................................. 9

     1.   This Case Is Exceptional ........................................................................ 10

     2.   Mitek Is the Prevailing Party ................................................................. 15

     3.   Any Award of Fees Should Include Fees for the IPR Proceedings ......... 16

   B.   An Award of Fees Against Shore Chan DePumpo LLP Is Also Justified ................. 16

   C.   An Award of Fees Is Also Appropriate Under the Court's Inherent Powers ........... 19

IV.  CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Beckman Instruments, Inc. v. LKB Produkter AB*,
  892 F.2d 1547 (Fed. Cir. 1989).............................................................................12

*Cent. Soya Co. v. Geo. A. Hormel & Co.*,
  723 F.2d 1573 (Fed. Cir. 1983).............................................................................16

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)................................................................................................17

*Deep Sky Software, Inc. v. Southwest Airlines Co.*,
  2015 U.S. Dist. LEXIS 178030, at *6 (S.D. Cal. Aug. 19, 2015) .........................16

*Drone Tech., Inc. v. Parrot S.A.*,
  2015 U.S. Dist. LEXIS 98829 (W.D. Pa. July 21, 2015) ......................................16

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011.).......................................................................13, 15

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)..............................................................................................10

*GMAC Bank v. HTFC Corp.*,
  248 F.R.D. 182 (E.D. Pa. Feb. 29, 2008) .............................................................18

*Haynes Int'l Inc. v. Jessop Steel Co.*,
  8 F.3d 1573 (Fed. Cir. 1993).................................................................................12

*Highway Equip. Co. v. FEGO, Ltd.*,
  469 F.3d 1027 (Fed. Cir. 2006).............................................................................15

*IA Labs CA, LLC v. Nintendo Co.*,
  2012 U.S. Dist. LEXIS 61080, at *11-12 (D. Md. May 1, 2012)..........................16

*Inland Steel Co. v. LTV Steel Co.*,
  364 F.3d 1318 (Fed. Cir. 2004).............................................................................10

*Johnson v. EEOC Charlotte Dist. Office*,
  2016 U.S. Dist. LEXIS 83059, at *15-16 (W.D.N.C. June 27, 2016) ...................18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  134 S. Ct. 1749 (2014).................................................................................9, 10, 14

ii

*Parallel Iron LLC v. NetApp, Inc.*,
   70 F. Supp. 3d 585 (D. Del. 2014)....................................................................15, 19

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
   840 F.2d 1565 (Fed. Cir. 1988)....................................................................16

*Prosser v. Gerber*,
   777 F.3d 155 (3d Cir. 2015)........................................................................17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*,
   278 F.3d 175 (3d Cir. Jan. 24, 2002) .........................................................17

*Raylon, LLC v. Complus Data Innovations, Inc.*,
   700 F.3d 1361 (Fed. Cir. 2012)....................................................................2

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*,
   No. 2:15-cv-1431, Dkt. No. 62 at 3-4 (E.D. Tex. Feb. 18, 2016)..............14

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
   858 F.3d 1383 (Fed. Cir. 2017)...........................................................9, 14, 15

*SFA Sys., LLC v. Newegg Inc.*,
   793 F.3d 1344 (Fed. Cir. 2015)....................................................................14

*Summit Data Sys. V. EMC Corp.*,
   No. 10-749-GMS, 2014 WL 4955689, at *4 (D. Del. Sept. 225, 2014)...........13, 15

*Thomas v. Tenneco Packaging Co., Inc.*,
   293 F.3d 1306 (11th Cir. 2002) ..................................................................18

**Federal Statutes**

28 U.S.C. § 1927................................................................................2, 9, 17, 19

35 U.S.C. § 285................................................................................ passim

**Federal Rules**

Fed. R. Civ. P. 54(d) ....................................................................................10

## I.   INTRODUCTION AND NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Rothschild Mobile Imaging Innovations, LLC ("RMII") initiated these patent

cases by filing a complaint against Mitek Systems, Inc. ("Mitek") on May 16, 2014, alleging

infringement of U.S. Patent Nos. 7,450,163 (the "'163 patent"), 7,456,872 (the "'872 patent"),

7,991,792 (the "'792 patent"), and 7,995,118 (the "'118 patent") (collectively, the "patents-in-

suit"). (D.I. 1.)[1] On June 12, 2014, before Mitek served a responsive pleading, RMII amended

the complaint to add JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively,

"JPMC") as defendants. (D.I. 7.) On September 8, 2014, RMII filed three additional actions

alleging infringement of the patents-in-suit by Mitek. (C.A. No. 14-1142, D.I. 1; C.A. No. 14-

1143, D.I. 1; C.A. No. 14-1144, D.I. 1.) In each of these actions, in addition to Mitek, RMII

named one of the following groups of banking entities as defendants: (i) Bank of America

Corporation and Bank of America, N.A. ("BoA"); (ii) Citigroup Inc. and Citibank, N.A. ("Citi");

and (iii) Wells Fargo & Company and Wells Fargo Bank, N.A. ("Wells Fargo"). (C.A. No. 14-

1142, D.I. 1; C.A. No. 14-1143, D.I. 1; C.A. No. 14-1144, D.I. 1.) RMII later amended these

complaints to also name either NCR Corporation ("NCR") or Fiserv, Inc. ("Fiserv") as a

defendant. (C.A. No. 14-1142, D.I. 55; C.A. No. 14-1143, D.I. 60; C.A. No. 14-1144, D.I. 58.)

On July 20, 2016, the U.S. Patent and Trademark Office's Patent Trial and Appeal Board

("PTAB") found all asserted claims unpatentable during *inter partes* review ("IPR") proceedings

initiated by Mitek in response to RMII's allegations—with the sole exception of the asserted

claims of the '872 patent, which RMII decided to abandon following institution of the IPR for

the '872 patent. (D.I. 84, Ex. 1; Matterer Decl., Ex. U, Request for Adverse Judgment; Ex. Y,

---

[1] All docket cites are to Case No. 14-617, unless otherwise noted.

Final Written Decision filed in IPR2015-00624 at 2-3.)[2] On September 16, 2016, in response to the PTAB's decisions, RMII filed a Motion to Dismiss without prejudice. (D.I. 81.) Defendants[3] opposed and requested that the court should, *inter alia*, dismiss with prejudice. (D.I. 83.) On September 15, 2017, the Court agreed with Defendants and dismissed the cases with prejudice. (D.I. 90.)

Mitek now requests this court for fees and costs because RMII never should have filed these cases. Put simply, from the beginning, it was evident that RMII did not "stop-and-think" before plunging ahead with filing its baseless lawsuits, as required under Rule 11. *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1366-67 (Fed. Cir. 2012). Nor did RMII continue to inquire into the merits of its case after filing. Instead, leveraging vexatious litigation activity and inflammatory rhetoric, RMII pursued its baseless allegations against Mitek and its customers in bad faith and with the intent of achieving a nuisance settlement. For these reasons, Mitek now requests that the Court find these cases "exceptional" and exercise its discretion to award Mitek its reasonable attorneys' fees pursuant to 35 U.S.C. § 285. Alternatively, or in addition, an award of fees is warranted from RMII's counsel, Shore Chan DePumpo LLP, under 28 U.S.C. § 1927. An award of fees is also warranted under the Court's inherent power.

## II.    STATEMENT OF FACTS

### A.    RMII's Baseless Allegations

From the beginning, Mitek expressed its serious concerns about whether RMII performed a sufficient pre-filing investigation in a Rule 11 letter served on November 19, 2014. (Matterer Decl., Ex. BB, Nov. 19, 2014 Letter form R. McGrath to M. Shore.) As explained in the letter—which detailed how at least one limitation in each asserted claim was not satisfied by the accused

---

[2] "Matterer Decl." refers to the Declaration of Mary Matterer, filed herewith.
[3] "Defendants" refers to Mitek, JPMC, BoA, Citi, Wells Fargo, NCR, and Fiserv.

products—had RMII engaged in a reasonable pre-filing investigation, it would have determined that there was no good faith basis for alleging infringement of the asserted claims. (*Id.*) Rather than meaningfully respond, RMII simply stated that it "disagree[d] with the contents of this letter," and that "Mitek will regret not accepting the extremely reasonable settlement that was offered." (Matterer Decl., Ex. A, Nov. 19, 2014 Email from M. Shore to R. McGrath.)

Moreover, any reasonable search would have uncovered the prior art that the PTAB found renders obvious the asserted claims of the patents-in-suit in the IPR proceedings. Nevertheless, RMII filed its complaints against the Defendants, alleging infringement of the patents-in-suit.

At the least, RMII should have known that the asserted claims were invalid by January 26, 2015, when Mitek filed petitions for IPR with the PTAB demonstrating—with expert support—that the asserted claims were unpatentable as obvious over the cited prior art. (*See, e.g.*, Matterer Decl., Exs. B-E, Petitions filed in IPR2015-00621, -00622, -00623, -00624; Exs. F-I, Declarations filed in IPR2015-00621, -00622, -00623, -00624.) If not then, there can be no question that RMII knew that the asserted claims were invalid by mid-2015, when the PTAB found that Mitek demonstrated a reasonable likelihood that it would prevail in showing the unpatentability of each and every claim asserted in these cases. (*See, e.g.*, Matterer Decl., Exs. J-M, Institution Decisions filed in IPR2015-00621, -00622, -00623, -00624.)

In response, RMII abandoned the asserted claims of the '872 patent by requesting entry of adverse judgment against itself and cancellation of the claims subject to IPR, which the PTAB granted. (Matterer Decl., Ex. U, Request for Adverse Judgment; Ex. Y, Final Written Decision filed in IPR2015-00624 at 2-3.) Regarding the remaining instituted IPR proceedings, RMII only presented weak and untenable positions. (*See, e.g.*, Matterer Decl., Exs. N-Q, Patent Owner's

Preliminary Responses filed in IPR2015-00621, -00622, -00623, -00624; Exs. R-T, Patent

Owner's Responses filed in IPR2015-00621, -00622, -00623.) As such, the PTAB found what

RMII knew or should have known before it filed its cases—that all asserted claims were obvious

in view of the prior art. (*See, e.g.*, D.I. 84, Ex. 1, Final Written Decisions filed in IPR2015-

00621, -00622, -00623.)

    **B.**    **RMII's Litigation Conduct**

    When RMII first initiated these cases, it accused only Mitek of infringing the patents-in-

suit. (D.I. 1.) It quickly became clear, however, that RMII was only interested in increasing the

cost and complexity of litigation and engaging in inflammatory rhetoric to coerce Mitek to settle.

As soon as RMII realized that Mitek would rather defend its case than agree to RMII's

unreasonable settlement demands, RMII's counsel—the self-proclaimed "agent of [Mitek's]

demise"—explained through a series of emails that "RMII would simply sue every

customer/direct infringer" because Mitek "needs to be put out of business through horrific

indemnity obligations":

> I conveyed to you that the offer would remain open as is until new
> counsel appeared, ***at which time RMII would simply sue every
> customer/direct infringer and not entertain any "wholesale
> level" settlement offers***.
>
> In essence, ***your client is too small to afford to play in the space,
> so it needs to be put out of business through horrific indemnity
> obligations***. In light of their bad faith conduct to date, ***I am happy
> to be the agent of their demise***.

(D.I. 28, Ex. 4.)

> To say the offer was "out of line" as to magnitude tells me that
> ***Mitek is either stupid*** (possible, but unlikely) or simply is stalling
> to buy time for an IPR or for some other reason. To state that
> extensions are normal, that is true for 30 days. It is not true in this
> case.

* * *

> I do agree that threats are non-productive. ***Actions will take the place of threats in due course. Mitek just needs to understand that there is only 1 way to deal with RMII going forward, honestly***.

(Matterer Decl., Ex. V, Sep. 29, 2014 Email from M. Shore to J. Yoon.)

> Neither you, nor any other lawyer at WSGR [Mitek's prior counsel] will ever get another extension from my firm on anything. You burned your bridge with SCD. Mitek (and you) lied to buy time. With a client dealing with brain cancer, that was about the sickest, sorriest thing I have seen in 25 years of practicing law. ***RMII will stomp Mitek out of existence***.

(D.I. 28, Ex. 5.)

True to its word, at every juncture, RMII charged ahead with its campaign to increase litigation costs and complexities to force Mitek to settle. First, RMII amended its complaint against Mitek to add JPMC as a defendant. (D.I. 7.) A few months later, RMII initiated three new actions against Mitek, each naming different banking entities as additional defendants (C.A. No. 14-1142, D.I. 1; C.A. No. 14-1143, D.I. 1; C.A. No. 14-1144, D.I. 1), shortly followed by amended complaints to add one of two technology companies that resell the accused Mitek technology (C.A. No. 14-1142, D.I. 55; C.A. No. 14-1143, D.I. 60; C.A. No. 14-1144, D.I. 58). In response, Mitek was forced to incur the costs of not only preparing and filing several costly motions to address RMII's litigation tactics, but was also compelled to bear the additional costs to manage four separate litigations in parallel.

As RMII readily admits, the three new actions against Mitek were filed in the same court and involved the same subject matter as the original action brought against Mitek. (*See, e.g.*, C.A. No. 14-1144, D.I. 13 at 4 ("RMII asserted the same Asserted patents and the same allegations of infringement against Mitek.").) As explained in Mitek's motion to dismiss these

5

duplicative actions, while RMII may not have been able to sue the four unrelated groups of banking entities in the same action, RMII was not required to include Mitek as a named defendant in each of these actions. (*See* C.A. No. 14-1142, D.I. 16 at 5-7.) Mitek's liability would have been determined through RMII's induced infringement claims against Mitek in the original action filed against Mitek. (*Id.*) Thus, there was simply no reason for filing and maintaining these duplicative suits against Mitek other than to increase litigation costs and complexity.

In a similar vein, RMII's allegations against the banking entities are peripheral to the claims against Mitek. Indeed, RMII's original complaint named only Mitek as a defendant, accusing it of infringing the patents-in-suit directly and by inducing "some of the largest banks" to infringe. (D.I. 1 at ¶¶15, 23, 28, 33, 38.) Only later did RMII amend its original complaint to include JPMC and initiate the additional actions against BoA, Citi, and Wells Fargo, seemingly as part of its plan to put Mitek "out of business through horrific indemnity obligations." (D.I. 28, Ex. 4.) RMII's allegations against the banking entities, however, were based solely on each banking entity including Mitek's technology in its mobile banking application. (D.I. 7, p. 3; C.A. No. 14-1142, D.I. 1; C.A. No. 14-1143, D.I. 1; C.A. No. 14-1144, D.I. 1.) Accordingly, Mitek was again forced to incur unnecessary litigation costs to move to sever and stay the cases against the banking entities, which the court granted. (D.I. 72.)

RMII's bad faith conduct continued after the PTAB decided to institute the IPRs as to all asserted claims and the district court case was stayed pending resolution of the IPRs. In view of the PTAB's decisions, the parties returned to settlement discussions, but again were unable to come to an agreement. Seemingly upset about the outcome of the discussion, RMII's counsel

again engaged in inappropriate and inflammatory rhetoric, further reflecting RMII's motive to

coerce settlement by threatening "bankruptcy" as a result of Mitek's "stupid decisions":

> Your **idiotic offer** was actually worse than Rothschild simply not
> responding to the IPR at all. ***Your time may be worth so little that
> wasting it is trivial. Mine is worth significantly more. We will not
> speak again, ever. When your firm gets a serious person on the
> case, she can contact me.***
>
> In the meantime, ***Mitek can roll along on the brink of bankruptcy
> because it makes stupid decisions like the one it made today***.

(Matterer Decl., Ex. W, Sep. 4, 2015 Email from M. Shore to R. McGrath.)

Rather than participate in RMII's unproductive verbal attacks, Mitek wished RMII's

counsel "a terrific labor day weekend," to which Mitek's counsel responded, "***Try not to stab

yourself running with scissors***." (Matterer Decl., Ex. W, Sep. 4, 2015 Email from M. Shore to

R. McGrath.)

Even worse, RMII made overstated representations to the public, ostensibly with the

intent to economically damage Mitek—a publicly traded company. Despite the meritless nature

of its claims, RMII publically labeled Mitek and six of its customers as infringers, issuing at least

one press release in which it not only publicized its infringement claims against Defendants, but

asserted an imminent expectation that it would "declare a victory" in the case. (D.I. 83, Ex. 2.)

## C.     Plaintiff RMII

RMII is the brainchild of Leigh M. Rothschild, a serial litigant and creator of several non-

practicing, patent assertion entities. (Matterer Decl., Ex. X, RPX 2015 NPE Activity: Highlights

Report (January 2016) at 6 (listing Mr. Rothschild as largest single non-practicing entity based

on the number of defendants against whom cases have been filed).) Although he has only been

named as a plaintiff in one patent matter, Mr. Rothschild has created many patent assertion shell

companies that, since spring 2014, have filed roughly 225 cases against all manner of large

corporations in various jurisdictions—making it one of the most prolific patent assertion entities over that period. For example, in addition to RMII, Mr. Rothschild created the following shell companies to assert his patents:

- Rothschild Connected Devices Innovations, which filed 60 cases between February 6 and November 30, 2015, against auto manufacturers, alarm companies, and network equipment makers;

- Rothschild Location Technologies, which filed 55 cases between May 19, 2014, and October 15, 2015, against auto manufacturers, cellular companies, and technology companies;

- Rothschild Patent Imaging, which filed almost 30 cases between August 26, 2016, and July 7, 2017, against network equipment makers, dating application providers, and technology companies; and

- Rothschild Digital Confirmation, which filed 20 cases between August 30, 2016, and September 11, 2017, against cellular companies, technology companies, and software providers.

(Matterer Decl., Ex. Z, Listing of Rothschild Entity Filings.)

Of those approximately 225 cases, however, almost 200 were voluntarily dismissed, likely indicating that the parties settled. (Matterer Decl., ¶ 31.) Indeed, it appears that only one patent owned by a Rothschild entity has ever received an infringement or invalidity determination in district court. (*Id.*, ¶ 32.) And even then, that one patent was adjudged to be invalid in only one of the 50 cases in which it was asserted. (*Id.*, ¶ 33.) No case ever filed by any of Mr. Rothschild's many shell companies appears to have reached trial. (*Id.*, ¶ 34.) Given Mr. Rothschild's pattern of litigation abuses characterized by the repeated filing of patent

infringement actions for the sole purpose of forcing settlements, at least one of Mr. Rothschild's shell entities was found liable for enhanced damages. *See Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1387-90 (Fed. Cir. 2017) (reversed a district court's failure to enhance damage against Rothschild Connected Devices Innovations, LLC).

## III.   ARGUMENT

There are several bases for awarding Mitek its reasonable attorneys' fees, which include one or more of awarding reasonable attorneys' fees pursuant to 35 U.S.C. § 285, awarding fees from RMII's outside counsel under 28 U.S.C. § 1927, and awarding fees under the Court's inherent power.

### A.   Mitek Is Entitled to Fees Under 35 U.S.C. § 285

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Thus, under the statute, there are two basic requirements: (1) that the case is "exceptional" and (2) that the party seeking fees is a "prevailing party."

The Supreme Court has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). According to the Court, "sanctionable conduct is not the appropriate benchmark." *Id.* at 1756-57. For example, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* The Court also explained that § 285 "demands a

simple discretionary inquiry" that is governed by a "preponderance of the evidence" standard. *Id.* at 1758.

While there is no specific test for exceptionality under § 285, district courts, "in the case-by-case exercise of their discretion, [should consider] the totality of the circumstances." *Id.* at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)) (internal quotations omitted). Under this standard, district courts may consider "a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* The Court additionally recognized that "there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified." *Id.* at 1759 (citing *Fogerty*, 510 U.S. at 534).

When determining whether a party is a prevailing party, the Federal Circuit has followed the Supreme Court's definition of a prevailing party as used in other fee-shifting statutes. *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004). In *Inland Steel*, the Federal Circuit held that district courts are to "apply the general principle that to be a prevailing party, one must receive at least some relief on the merits, which alters . . . the legal relationship of the parties." *Id.* (quotation marks omitted).

### 1.    This Case Is Exceptional

This case is "exceptional" under 35 U.S.C. § 285 because, in view of the totality of the circumstances, it "stands out from others" with respect to the "substantive strength" of RMII's litigating position and the "unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1751; *see also* 35 U.S.C. § 285; Fed. R. Civ. P. 54(d).

### a)     RMII's Allegations Lacked Substantive Strength

If, before this litigation, RMII performed a reasonable investigation, it would have discovered that the asserted claims were invalid and not infringed, especially given the state of the art at the time of the alleged invention and the substantial amount of publicly available information concerning the accused products. Moreover, throughout this litigation, RMII had multiple opportunities to evaluate its allegations, and come to the only reasonable conclusion—that its allegations were baseless. However, rather than dismiss its frivolous claims to save both parties needless attorneys' fees and costs, and unburden this Court with a needless dispute, RMII ignored the truth and continued to litigate.

Even if RMII is given the benefit of the doubt that it performed a reasonable pre-suit investigation, RMII was informed of the baselessness of its allegations on numerous occasions. In fact, on November 19, 2014, Mitek served a Rule 11 letter identifying specific limitations in the asserted claims that were not satisfied by the accused products. (Matterer Decl., Ex. BB, Nov. 19, 2014 Letter from R. McGrath to M. Shore.) Yet, rather than substantively responding to the merits of Mitek's position, RMII responded only with its conclusory remarks that it was "more than satisfied that [its] Rule 11 investigation was more than adequate, that the claims read on the devices as alleged, and that in the end, Mitek will regret not accepting the extremely reasonable settlement that was offered." (Matterer Decl., Ex. A, Nov. 19, 2014 Email from M. Shore to R. McGrath.)

RMII should have also recognized that the patents-in-suit were invalid by no later than mid-2015, when the PTAB decided to institute Mitek's IPRs with respect to each and every claim asserted against Mitek. (*See, e.g.*, Matterer Decl., Exs. J-M, Institution Decisions filed in IPR2015-00621, -00622, -00623, -00624; D.I. 84, Ex. 1, Final Written Decisions filed in

11

IPR2015-00621, -00622, -00623.) Each of RMII's arguments in response to Mitek's invalidity

positions lacked substantive strength, as confirmed by the PTAB's wholesale rejection of RMII's

arguments presented during the IPR proceedings. (*See, e.g.*, D.I. 84, Ex. 1, Final Written

Decisions filed in IPR2015-00621, -00622, -00623.) RMII's failure to consider these serious

flaws in its allegations weighs strongly in favor of awarding attorneys' fees and costs to Mitek.

### b) RMII Needlessly Increased Litigation Costs and Complexities in Bad Faith to Coerce Settlement

"Among the types of conduct which can form a basis for finding a case exceptional are

willful infringement, inequitable conduct before the P.T.O., misconduct during litigation,

vexatious or unjustified litigation, and frivolous suit." *Beckman Instruments, Inc. v. LKB*

*Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989). An exceptional case finding also can result

from "a strategy of vexatious activity," which may include the assertion of baseless or frivolous

claims and other litigation misconduct. *Id.* at 1552 (emphasis omitted). "A frivolous

infringement suit is one in which the patentee knew or, on reasonable investigation, should have

known, was baseless." *Haynes Int'l Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993).

Throughout the pendency of this case, RMII has undertaken a concerted effort to increase

both the cost and complexity of essentially every issue in hopes of forcing Mitek to settle. This

effort began early with the filing of duplicative cases against Mitek and the assertion of the

patents-in-suit against Mitek's customers, and continued throughout the duration of the

litigation.[4] At each juncture, RMII maximized all possible opportunities to force unneeded work

by Mitek, requiring Mitek to expend a considerable amount of time and expense researching and

---

[4] Another illustration of RMII's strategy of forcing Mitek to needlessly litigate frivolous issues is RMII's willfulness allegations. This Court dismissed those allegations in its March 30, 2015 Order. (*See* D.I. 51.) Yet, less than four months later, RMII—after acknowledging the Court's dismissal—repleaded the exact same willfulness allegations without the addition of any factual support. (*See, e.g.*, C.A. No. 14-1143, D.I. 60, ¶¶ 31, 46, 62, 78.)

briefing issues that should not have arisen in the first place. RMII's decision to litigate the case in this manner—in hopes of extracting settlements worth a fraction of what the case would cost to litigate—weighs in favor of awarding attorneys' fees and costs to Mitek. *Summit Data Sys. V. EMC Corp.*, No. 10-749-GMS, 2014 WL 4955689, at *4 (D. Del. Sept. 225, 2014); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).

Most troubling, however, is the unmistakable bad faith underlying RMII's conduct. RMII's counsel made it clear that the purpose of this case was not to litigate, but instead coerce settlement through inappropriate litigation tactics, threats, abusive language and personal insults, and overstated press releases. As RMII put it, Mitek must accept RMII's settlement offer, or else risk being "put out of business through horrific indemnity obligations," being "stomp[ed] . . . out of existence," and "roll[ing] along on the brink of bankruptcy." (D.I. 28, Exs. 4-5; Matterer Decl., Ex. W, Sep. 4, 2015 Email from M. Shore to R. McGrath.) When Mitek refused to accept RMII's unreasonable offers, RMII resorted to abusive language and insults, personally referring to Mitek and its attorneys as "stupid" and "idiotic," and going so far as to say that Mitek's counsel's "time may be worth so little that wasting it is trivial" while RMII's counsel's time "is worth significantly more" and that Mitek's counsel should "Try not to stab yourself running with scissors." (Matterer Decl., Ex. V, Sep. 29, 2014 Email from M. Shore to J. Yoon; Ex. W, Sep. 4, 2015 Email from M. Shore to R. McGrath.) Thus, RMII not only engaged in inappropriate litigation tactics, it did so with the intention of increasing costs and harassing Mitek and its attorneys to coerce settlement.

### c) RMII's Petition for IPR Was Baseless

RMII's bad faith was further exacerbated when it filed a petition for IPR against one of Mitek's patents, U.S. Patent No. 8,379,914. (Matterer Decl., Ex. CC, Petition filed in IPR2016-

00457.) As discussed above, RMII is a non-practicing entity and does not have any products of its own. Therefore, RMII cannot infringe Mitek's patent. As such, RMII's petition for IPR— which did not make it past the institution stage—is yet another example of RMII's motive to burden Mitek with costs to force settlement.

### d)      RMII's Conduct Must Be Deterred

Under § 285, district courts may award fees to deter plaintiffs from bringing future frivolous suits. *Octane Fitness*, 134 S. Ct. at 1756 n.6. RMII's conduct here—which is in line with its regular practice of bringing and maintaining baseless lawsuits in order to coerce a nuisance settlement—is precisely the type of conduct that should be deterred. As discussed above, Mr. Rothschild, the man behind RMII, is notorious for creating shell companies for asserting his patents to obtain quick settlements worth a fraction of what it would cost to litigate. *See Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, No. 2:15-cv-1431, Dkt. No. 62 at 3-4 (E.D. Tex. Feb. 18, 2016) (attached as Ex. AA); Patent troll with an "Internet Drink Mixer" and a nonexistent office could be in trouble, available at https://arstechnica.com/tech-policy/2017/04/garmin-sued-in-east-texas-over-patents-on-an-internet-drink-mixer-seeks-legal-fees/ (discussing Mr. Rothschild's shell company's penchant for filing "meritless nuisance suits").

In fact, the Federal Circuit recently reversed a district court's failure to enhance damages against one of Rothschild's shell entities in *Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1387-90 (Fed. Cir. 2017) (Fed. Cir. 2017). Writing for a unanimous panel, Judge Wallach found that the district court failed to consider plaintiff's conduct in other related matters. *Id.* at 1389-90. Indeed, the court expressly relied on *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015), and its holding that "a

14

pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." Similar to the facts in *Rothschild Connected Devices Innovations*, Rothschild has a clear history of filing tens of complaints based on the same patents at issue in this case and settling before any substantive determination is made by the presiding court. *See infra*. As one example, the '872 patent, asserted by RMII against Mitek in the four cases at issue here, also was alleged to have been infringed in 20 complaints filed by Rothschild Digital Confirmation LLC—but has never been subject to substantive analysis before a district court. (*See* Matterer Decl., ¶ 32.)

This pattern of bringing and maintaining suits regardless of merit and increasing litigation costs and complexity in order to coerce settlement should not be allowed to continue. Thus, fees are warranted to deter such future conduct by RMII. *Eon-Net*, 653 F.3d at 1327 (affirming an award of fees because the patentee "acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement"); *Summit Data*, 2014 WL 4955689, at *12; *Parallel Iron LLC v. NetApp, Inc.*, 70 F. Supp. 3d 585, 594 (D. Del. 2014).

## 2.     Mitek Is the Prevailing Party

Because the court agreed with Defendants and dismissed the complaints with prejudice, there can be no dispute that Mitek is the prevailing party. The Federal Circuit has concluded that, "as a matter of patent law," the dismissal of claims with prejudice when granted by a district court "has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties, such that [a] district court properly [can] entertain [a] fee claim under 35 U.S.C. § 285." *Highway Equip. Co. v. FEGO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006).

### 3.     Any Award of Fees Should Include Fees for the IPR Proceedings

Having needlessly subjected Mitek to the expense of petitioning for and pursuing IPRs on

the patents-in-suit, RMII should be required to pay Mitek's fees for those proceedings as well.

The Federal Circuit has interpreted attorney fees awards "to include those sums that the

prevailing party incurs in the preparation for and performance of legal services **related to** the

suit." *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (emphasis

added). In this case, Mitek's counsel's services performed during the IPR proceedings were

related to RMII's district court suit: *Inter partes* review "was initiated during and in reaction to

plaintiff's action here. Further, the PTO's cancellation of the asserted [patent] claims on grounds

of invalidity disposed of plaintiff's complaint here and made defendant the prevailing party."

*Deep Sky Software, Inc. v. Southwest Airlines Co.*, 2015 U.S. Dist. LEXIS 178030, at *6 (S.D.

Cal. Aug. 19, 2015). In other words, "the [PTAB] proceedings essentially substituted for work

that would otherwise have been done before this court." *Id.* Mitek, therefore, should be awarded

its fees for the IPR proceedings. *See, e.g.*, *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,

840 F.2d 1565, 1568-69 (Fed. Cir. 1988) (awarding fees for reissue proceedings because the

prevailing party was "entitled to reasonable attorney fees based upon the premise that the reissue

proceedings substituted for the district court litigation on all issues considered by the PTO and

the Board"); *Drone Tech., Inc. v. Parrot S.A.*, 2015 U.S. Dist. LEXIS 98829 (W.D. Pa. July 21,

2015) (awarding fees incurred in *inter partes* review proceedings); *IA Labs CA, LLC v. Nintendo*

*Co.*, 2012 U.S. Dist. LEXIS 61080, at *11-12 (D. Md. May 1, 2012) *aff'd*, 515 F. App'x 892

(Fed. Cir. 2013) (awarding fees for work done during reexamination proceedings).

### B.     An Award of Fees Against Shore Chan DePumpo LLP Is Also Justified

A court may impose sanctions on counsel for a party, *inter alia*, under 28 U.S.C. § 1927 or through the exercise of the Court's inherent authority. Section 1927—which provides for sanctions against an attorney in cases of bad faith conduct—has been applied in this circuit when "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Prosser v. Gerber*, 777 F.3d 155, 162 (3d Cir. 2015). As articulated by the Supreme Court, "[c]ircumstances that may justify sanctions pursuant to a court's inherent power include cases where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "A court may resort to its inherent power to impose sanctions even if much of the misconduct at issue is also sanctionable under statute or rules of court." *Id.* at 45. Sanctions under § 1927 or the Court's inherent power both require a finding of bad faith, but "that finding need not be explicit." *In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*, 278 F.3d 175, 189 (3d Cir. Jan. 24, 2002)

This Court should impose sanctions on RMII's attorneys at Shore Chan DePumpo LLP for bad faith litigation tactics and egregious conduct that caused Mitek and this Court to expend considerable time, money, and resources handling duplicative cases and unnecessary pleadings. Counsel's filing of several nearly identical cases—all involving the same patents, the same allegedly infringing conduct, the same allegedly infringing products, and the same damages requests—resulted in Mitek's having to needlessly defend itself for the same conduct across several matters.

Further, RMII's counsel—the self-appointed "agent of [Mitek's] demise" (D.I. 28, Ex. 4)—conducted himself in a manner expressly intended not only to inconvenience this Court and increase Mitek's litigation costs, but to "stomp Mitek out of existence," (D.I. 28, Ex. 5). Indeed,

as previously discussed, in the midst of settlement negotiations, counsel responded to Mitek's "idiotic offer" by castigating Mitek's counsel: "Your time may be worth so little that wasting it is trivial. Mine is worth significantly more. We will not speak again, ever. When your firm gets a serious person on the case, she can contact me. In the meantime, Mitek can roll along on the brink of bankruptcy because it makes stupid decisions like the one it made today." (Matterer Decl., Ex. W, Sep. 4, 2015 Email from M. Shore to R. McGrath.) That reaction mirrors counsel's proclamations from earlier in the dispute, where he promised to "sue every customer/direct infringer and not entertain any 'wholesale level' settlement offers" because Mitek "is too small to afford to play in the space [and] needs to be put out of business through horrific indemnity obligations." (D.I. 28, Ex. 4.) Plaintiff counsel's tone and express desire to increase Mitek's litigation costs for no legitimate reason (and to burden this Court with redundant cases) evidences their bad faith and unreasonableness and provides a sufficient basis for this Court to grant sanctions. *See, e.g., Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306 (11th Cir. 2002) (awarding fees in light of documents "saturated with invective directed at opposing counsel" and "pervaded with rude, demeaning remarks about opposing counsel's physical traits and demeanor"); *Johnson v. EEOC Charlotte Dist. Office*, 2016 U.S. Dist. LEXIS 83059, at *15-16 (W.D.N.C. June 27, 2016) ("Plaintiff's threatening letters are harassing and further demonstrate Plaintiff's use of the judicial system in bad faith."); *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 187 (E.D. Pa. Feb. 29, 2008) (relying on patronizing statements made towards opposing counsel, including calling counsel a "joke" and a "fucking idiot," to impose sanctions).

18

### C.        An Award of Fees Is Also Appropriate Under the Court's Inherent Powers

As an alternative to awarding fees under § 285, an award of fees is warranted under the

Court's inherent power "to fashion an appropriate sanction for conduct which abuses the judicial

process." *Parallel Iron LLC v. NetApp, Inc.*, 70 F. Supp. 3d 585, 594 (D. Del. 2014).

## IV.     CONCLUSION

For the forgoing reasons, Mitek respectfully requests that this Court grant this motion and

enter an order finding that this case is exceptional under 35 U.S.C. § 285 and that Mitek is the

prevailing party and is entitled to its reasonable attorney fees and expenses to the extent

permitted by law. Alternatively, or in addition, Mitek respectfully requests an award of fees and

costs from RMII's counsel, Shore Chan DePumpo LLP, under 28 U.S.C. § 1927. An award of

fees and costs is also warranted under the Court's inherent power. Finally, Mitek requests that

the Court direct Mitek to submit evidence of its reasonable fees and expenses by a date certain.

Dated: September 29, 2017

          */s/ Mary B. Matterer*
Mary B. Matterer (I.D. #2696)
Richard K. Herrmann (I.D. #405)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

OF COUNSEL:

Naveen Modi
Phillip W. Citroen
PAUL HASTINGS LLP
875 15th Street NW
Washington, D.C. 20005
(202) 551-1700
naveenmodi@paulhastings.com
phillipcitroen@paulhastings.com

ATTORNEYS FOR DEFENDANT
MITEK SYSTEMS, INC.

19