IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 14-617-GMS |
| MITEK SYSTEMS, INC., JPMORGAN CHASE & CO. and JPMORGAN CHASE BANK, N.A. | ) ) ) ) ) | |
| Defendants | ) ) | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 14-1142-GMS |
| BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., NCR CORPORATION and MITEK SYSTEMS, INC. | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 14-1143-GMS |
| CITIGROUP, INC., CITIBANK, N.A., NCR CORPORATION and MITEK SYSTEMS, INC. | ) ) ) ) ) | |
| Defendants. | ) ) | |

|  |  |
|---|---|
| ROTHSCHILD MOBILE IMAGING INNOVATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO & COMPANY, WELLS FARGO BANK, N.A., FISERV, INC. and MITEK SYSTEMS, INC. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 14-1144-GMS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM

### I. INTRODUCTION

Plaintiff Rothschild Mobile Imaging Innovations, LLC ("RMII") filed a patent infringement suit against defendant Mitek Systems, Inc. ("Mitek"); JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMC"); Bank of America Corporation and Bank of America, N.A. ("BoA"); Citigroup Inc. and Citibank, N.A. ("Citi"); Wells Fargo & Company and Wells Fargo Bank, N.A. ("Wells Fargo"); NCR Corporation ("NCR"); and Fiserv, Inc. ("Fiserv") alleging infringement of U.S. Patent Nos. 7,450,163 (the "'163 patent"), 7,456,872 (the "'872 patent"), 7,991,792 (the "'792 patent"), and 7,995,118 (the "'118 patent") (collectively, the "patents-in-suit"). (D.I. 1[1]; C.A. No. 14-1142, D.I. 1, 55; C.A. No. 14-1143, D.I. 1, 60; C.A. No. 14-1144, D.I. 1, 58.) The U.S. Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB") instituted *inter partes* review ("IPR") on all of the asserted claims of the '163, '792, '872, and '118 patents. The PTAB found that the asserted claims of the '163, '792, and '118

---

[1] All docket cites are to Case No. 14-617, unless otherwise noted.

patents were unpatentable and entered an adverse judgment against the '872 patent upon RMII's request. Subsequent to the PTAB's decisions, RMII moved to dismiss its case against Mitek. (D.I. 81.) The court granted dismissal with prejudice. (D.I. 90.) Mitek's motion now seeks an award of attorney's fees and expenses pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the court's inherent power. (D.I. 92.) Also before the court is RMII's motion to strike Mitek's motion for attorney's fees and expenses and to strike certain evidence submitted in support of Mitek's motion. (D.I. 102.) For the following reasons, the court will deny Mitek's motion for attorney's fees and expenses as well as RMII's motion to strike as moot.

## II. BACKGROUND

RMII is one of several non-practicing entities that are run by Managing Director and inventor of the patents-in-suit, Leigh M. Rothschild. (D.I. 104 at 3.) On May 16, 2014, RMII initiated a suit against Mitek claiming infringement of the patents-in-suit. (D.I. 1.) On June 12, 2014, RMII amended its Complaint to add JPMC as a defendant. (D.I. 7.) On September 8, 2014, RMII filed three additional actions naming Mitek's customers BoA, Citi, and Wells Fargo as defendants. (C.A. No. 14-1142, D.I. 1; C.A. No. 14-1143, D.I. 1; C.A. No. 14-1144, D.I. 1.)

On September 29, 2014, the parties engaged in settlement conversations where RMII's counsel commented that it intended to "sue every customer/direct infringer and not entertain any 'wholesale level' settlement offers." (D.I. 28 at Ex. 4.) Further, RMII's counsel warned Mitek that it was "too small to afford to play in the space, so it needs to be put out of business through horrific indemnity obligations. In light of [Mitek's] bad faith conduct to date, I am happy to be the agent of their demise." (*Id.*) RMII's counsel alleged that "actions will take the place of threats in due course" and that "RMII will stomp Mitek out of existence." (D.I. 28 at Ex. 5.) On November 19, 2014, Mitek served RMII with a notice pursuant to Federal Rule of Civil Procedure

3

11 ("Rule 11 letter"), which expressed Mitek's concerns with the sufficiency of RMII's pre-filing investigation. (D.I. 95 at Ex. BB.) Specifically, the Rule 11 letter detailed how at least one limitation in each asserted claim was not satisfied by the accused products. (*Id.*) The Rule 11 letter complained that had RMII conducted a sufficient pre-filing investigation, it would have determined that there was no good faith basis for alleging infringement of the asserted claims. (*Id.*) Mitek did not include any attachments to the Rule 11 letter, and Mitek did not follow the Rule 11 letter with a motion for sanctions.

On January 26, 2015, Mitek filed IPR petitions claiming that all of RMII's asserted claims were unpatentable as obvious over the cited prior art. (D.I. 93 at 3; D.I. 94 at Exs. B-E.) On July 8, 2015, RMII amended the Complaint to name NCR and Fiserv as defendants. (C.A. No. 14-1142, D.I. 55; C.A. No. 14-1143, D.I. 60; C.A. No. 14-1144, D.I. 58.) Between July and August of 2015, the PTAB instituted review on all of the asserted claims in the patents-in-suit. (D.I. 104 at 6; D.I. 76 at 1.) Following the PTAB's institution decisions, the parties submitted a joint stipulation to stay the litigation. (D.I. 73.) The court entered a stay in the case on August 19, 2015. (D.I. 74.) During the course of the settlement negotiations that took place during the stay, RMII's counsel rejected Mitek's offers as "idiotic" and proclaimed that "Mitek can roll along on the brink of bankruptcy." (D.I. 95 at W.) The settlement discussions, again, were fruitless.

On January 26, 2016, RMII filed a petition for IPR against Mitek's patent, U.S. Patent No. 8,379,914. (D.I. 95 at Ex. CC.) RMII's petition was rejected seven months later. IPR2016-00457. By July 20, 2016, the PTAB had either invalidated or entered an adverse judgment on all of the asserted claims of the patents-in-suit. (D.I. 84 at Ex. 1 at 51, 98-99, 137; D.I. 95 at Ex BB.) Following the PTAB's decisions, the parties submitted two joint requests and two stipulations to extend the length of the stay in the district court litigation from August 3, 2016 until September

4

16, 2016. (D.I. 76, 77, 78, 79.) On September 16, 2016, RMII filed a motion to dismiss its Complaint without prejudice. (D.I. 81.) On September 15, 2017, the court ordered RMII's Complaint dismissed with prejudice. (D.I. 90.) Fourteen days later, on September 29, 2016, Mitek filed the present motion for attorney's fees. (D.I. 92.) On November 13, 2017, RMII opposed Mitek's motion for attorney's fees and filed the pending motion to strike. (D.I. 103.)

### III.  STANDARD OF REVIEW

In patent law cases, a court is authorized by statute "in exceptional cases [to] . . . award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court has held that an "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). A party moving for attorney's fees must demonstrate, by a preponderance of the evidence, that the case is "exceptional." *Id.* at 1758. Exceptional cases involve "litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002). Ultimately, the court must make a decision based on the totality of circumstances. *See Octane Fitness*, 134 S.Ct. at 1756.

A court may also award attorney's fees under 28 U.S.C. § 1927. According to the statute, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Third Circuit has held that sanctions are warranted under Section 1927 if an attorney has "(1) multiplied proceedings; (2)

unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." *LaSalle Nat'l Bank v. First Conn. Holding Group, L.L.C. XXIII*, 287 F.3d 279, 288 (3d Cir. 2002). A finding of willful bad faith is required. *Id.* at 181.

In addition to Section 1927, the Supreme Court has authorized a district court to use its "inherent power to police itself" and "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks omitted); *see LaSalle Nat'l Bank*, 287 F.3d at 288 ("[A]n award of fees and costs pursuant to the court's inherent authority to control litigation will usually require a finding of bad faith.")

## IV. DISCUSSION

### A. Fees Under 35 U.S.C. § 285

The parties do not dispute that Mitek is the prevailing party as required by Section 285. The award of attorney's fees, therefore, turns on whether this case is exceptional. The court does not find that this case is exceptional.

At the outset, the court notes that Mitek has, indeed, failed to comply with the requirements of Fed. R. Civ. P. 54(d)(2)(B).[2] Despite this lapse, the court will address the merits of Mitek's motion.

---

[2] RMII has moved to strike Mitek's motion for sanctions under Section 285 for being procedurally deficient. (D.I. 103 at 3-5.) Specifically, RMII argues that Mitek failed to include the amount of fees, or an estimate of the amount of fees, that it requests from RMII as required by Federal Rule of Civil Procedure 54(d)(2)(B). (*Id.*) Mitek does not dispute this fact, but instead argues that it is not required to present a fee amount and that the court is able to grant the motion for fees and later determine the exact amount owed. (D.I. 106 at 4.) The court disagrees with Mitek.
Before the court can decide the merits of a Section 285 motion, the court must determine if the motion satisfies the requirements of Rule 54(d)(2)(B) which states:

> Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; (iii) state the

Mitek alleges that this case is exceptional because: (1) RMII should have known that its suit was baseless when it received the Rule 11 letter and when the PTAB instituted IPR on all of the patents-in-suit; (2) RMII increased the costs and complexity of the litigation by suing six of Mitek's customers; (3) RMII's counsel made unwise comments to Mitek's counsel during settlement negotiations in bad faith to coerce settlement; and (4) Rothschild's litigation history demonstrates that this suit was a part of a pattern of frivolous suits brought by Rothschild's companies. (D.I. 93.)

Mitek first claims that this case is exceptional because RMII should have known that its suit was baseless when RMII received the Rule 11 letter and when the PTAB instituted IPR on all of the patents-in-suit. (D.I. 93 at 12.) The court disagrees.

Mitek's Rule 11 letter to RMII contains little more than conclusory contentions that the asserted claim limitations do not cover Mitek's products. (D.I. 95 at Ex. BB.) Mitek did not produce any additional support for its assertions. RMII, on the other hand, contends that its counsel, Chan, conducted the requisite pre-suit investigation. (D.I. 104 at 8-11.) Chan submitted an affidavit to the court indicating that his team expended "at least 400 manhours and over $20,000 in expenses" to perform the following analyses:

> (a) reviewing the patents, their specifications, and claims; (b) reviewing [Mitek's] prosecution histories; (b) reviewing the prior art of record; (c) reviewing the target's patents and the prior art identified by/to the target therein; (d) assessing any validity issues based on such prior art; (e) identifying any claim construction issues based on the claim language, the intrinsic record, and prior art; (f) researching the target's infringing instrumentalities; (g) consulting with technical experts to confirm [RMII's]

---

amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B); *see also IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1385 (Fed. Cir. 2005) ("[W]e hold that any claim to attorney fees must be processed in compliance with Rule 54(d)(2)(B). No provision in section 285 exempts requests for attorney fees thereunder from compliance with Rule 54(d)(2)(B).").

7

>      infringement assessments; and (h) consulting with economic experts to understand
>      reasonable royalty models.

(D.I 104 at Ex. B ¶ 6, 8.) Given Chan's affidavit, and the dearth of evidence in opposition, the court understands why RMII did not blink in the face of Mitek's Rule 11 letter.

Next, Mitek contends, without the support of any authority, that RMII should have known that its case lacked substantive strength when the PTAB instituted IPR. (D.I. 93 at 11-12.) This contention also fails. Mitek's claims require the court to evaluate the strength of the parties' substantive positions both in the instant litigation and in the PTAB proceedings, without the benefit of claim construction, expert testimony, or any briefing on the merits of the now dismissed Complaint. The court refuses to make the attempt. Simply put, this case is not exceptional.

Mitek also argues that RMII's inclusion of six of Mitek's customers as defendants makes this case exceptional. Specifically, Mitek claims that RMII's addition of Mitek's customers was in furtherance of RMII's "strategy of vexatious activity" that "needlessly increased litigation costs and complexities in bad faith to coerce settlement." (D.I. 93 at 12.) Notwithstanding Mitek's contentions, there is nothing exceptional about RMII's suit against Mitek's customers. The Patent Act expressly permits adding downstream infringers to a patent infringement suit. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority . . . uses . . . any patented invention, within the United States . . . infringes the patent."); *see also Pragmatus Telecom LLC v. Newegg Inc.*, No. CV 12-1533-RGA, 2016 WL 675529, at *3 (D. Del. Feb. 18, 2016) (finding that a case is not exceptional simply because a party files infringement suits against customers in manner expressly contemplated by the Patent Act).

Further, the record does not support Mitek's assertion that "[a]t each juncture, RMII maximized all possible opportunities to force unneeded work." (D.I. 93 at 12.) Rather, it seems that RMII's actions demonstrated a desire to conserve the court's resources. After RMII sued

8

Mitek's customers, Mitek filed a motion to sever, a motion to stay, and a motion to transfer. (D.I. 26.) The court granted the motions to sever and to stay and denied the motion to transfer. (D.I. 72.) Shortly thereafter, RMII, Mitek, and Mitek's customers jointly stipulated to stay the case pending the PTAB proceeding involving all the patents-in-suit and extended that stay four times. (D.I. 73, 76, 77, 78, 79.) During the stay, RMII filed one IPR petition against one of Mitek's patents, which was denied seven months later. (D.I. 95 at Ex. CC); IPR2016-00457. Finally, RMII moved to dismiss the case promptly after the expiration of the stay following the PTAB's decisions. (D.I. 81.) The court finds no evidence on the record to support Mitek's argument that this case is exceptional because RMII sought "to maximize all possible opportunities to force unneeded work."

Next, Mitek argues that RMII's counsel's comments[3] make this case exceptional because they were made to coerce settlement and they serve as evidence of RMII's bad faith in pursuing this case. (D.I. 93 at 13.) Again, the court disagrees.

The comments made by RMII's counsel, though nasty, did not lead to any material activity in this case. For example, by the time RMII's counsel "threatened" to sue all of Mitek's customers, RMII had already sued four of Mitek's customers and later added only two more—NCR and Fiserv. (C.A. No. 14-1142, D.I. 55; C.A. No. 14-1143, D.I. 60; C.A. No. 14-1144, D.I. 58.) Additionally, despite RMII's comments about Mitek's financial instability and desire to "stomp it out of existence," RMII did not do so. Instead, it was Mitek who filed petitions for IPR on all the

---

[3] RMII argues that the statements made during the settlement negotiations are inadmissible under Federal Rule of Evidence 408. (D.I. 103 at 5.) Rule 408 does not ban all evidence related to settlements. *See* Fed. R. Evid. 408(b). By its own language, Rule 408 only prohibits the use of evidence of a settlement offer or a statement made during the negotiations to "prove or disprove the validity" of the underlying claim. Fed. R. Evid. 408(a). Thus, evidence of a settlement offer or negotiations can be used to prove or disapprove the validity of some unrelated claim, in this case, a claim for attorney's fees.

claims at issue, all of which resulted in adverse rulings against RMII. (D.I. 84 at Ex. 1 at 51, 98-99, 137; D.I. 95 at Ex BB.) Following those decisions, the parties attempted to settle the case once more before RMII moved to dismiss its case. (D.I. 81.) Finally, Mitek cited to a number of comments in its briefing that occurred before it sent the Rule 11 letter to RMII, but, until now, failed to mention those comments in either the Rule 11 letter or to the court. Thus, despite RMII's counsel's admittedly aggressive comments, those remarks did not result in the vexatious litigation that Mitek wants the court to believe took place. Indeed, "'hard-fought' litigation does not necessarily constitute 'vexatious or bad faith litigation.'" *Lifesciences AG v. Corevalve, Inc.*, 2011 WL 446203 (D. Del. Feb. 7, 2011) (citation omitted). In other words, the court is not persuaded that this case exemplified anything more than the challenges of vigorous advocacy by opposing parties who espouse materially different views on many issues.

Finally, Mitek suggests that Rothschild's litigation history is a factor that contributes to the exceptionality of this case. (D.I. 93 at 14-15.) Mitek cites to *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383 (Fed. Cir. 2017) in support of its argument that the Federal Circuit has found Rothschild's litigation history important to the determination of fees under Section 285. (*Id.*) Conversely, RMII contends that the evidence Mitek submitted of the other patent suits RMII has filed, in addition to other research in Mitek's Declaration regarding Rothschild's litigation history, is inadmissible hearsay according to Fed. R. Evid. 801 and Fed. R. Evid. 802. (D.I. 103 at 7.) The court does not need to delve into the evidentiary issues concerning the admissibility Mitek's evidence of Rothschild's litigation history as this evidence does not make this case exceptional.

The Federal Circuit has established that evidence of a "pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing

10

settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015); *see also Rothschild Connected Devices Innovations*, 858 F.3d at 1390. Here, Mitek submitted evidence that Rothschild created numerous shell companies that have litigated approximately 225 cases. (D.I. 93 at 8.) Mitek contends that, like in the case *Rothschild Connected Devices Innovations*, its evidence shows that Rothschild's companies have a pattern of asserting baseless claims against parties in order to coerce settlement. (D.I. 93 at 14-15.) This case, however, is distinguishable from *Rothschild Connected Devices Innovations*. In *Rothschild Connected Devices Innovations*, the Federal Circuit found that the district court erred by overlooking Rothschild's litigation history which demonstrated that Rothschild's company asserted the claim at issue in fifty-eight other cases against technologies ranging from video cameras to coffeemakers to heat pumps. *Rothschild Connected Devices Innovations*, 858 F.3d at 1389. The vast majority of those cases, the Federal Circuit noted, settled for significantly below the average cost of defending an infringement law suit. *Id.* Here, however, Mitek has neither identified any instances where the patents-in-suit were repeatedly litigated in other matters[4] nor has

---

[4] Mitek argues that the '872 patent was asserted by RMII in twenty complaints filed by Rothschild Digital Confirmation LLC. (D.I. 93 at 15.) Mitek, however, provides the court with an improper citation to Matterer Decl. ¶ 32. This citation points to a paragraph that states:

> I was able to locate only one case in which a patent owned by a Rothschild entity has ever received an infringement or invalidity determination in district court: U.S. Patent No. 8,606,503 was found invalid by Judge Robert W. Schroeder III of the Eastern District of Texas on May 16, 2016, in case no. 6:15cv682 (and reconsideration was denied on December 5, 2016).

(D.I. 94 at ¶32.) This citation does not provide any support for Mitek's assertion. Further, this is not the first instance in which Mitek has provided the court with citations to the record that do not exist to support its argument. *See* (D.I. 93 at 3) (citing to "Matterer Decl. Ex. A, Nov. 19 2014 Email from M. Shore to R. McGrath" where no such email exists in Exhibit A.)

11

Mitek presented any settlement data with respect to the asserted patents-in-suit. Therefore, it is difficult for the court to compare those apples to these oranges. As a result, the court will deny Mitek's motion for attorney's fees and expenses pursuant to 35 U.S.C. § 285.

### B. Fees Under 28 U.S.C. § 1927 and the Court's Inherent Power

The Third Circuit has cautioned that "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *LaSalle Nat'l Bank*, 287 F.3d at 288; *see also Energy Transp. Grp., Inc. v. Sonic Innovations, Inc.*, No. CA 05-422-GMS, 2011 WL 2222066, at *17 (D. Del. June 7, 2011), aff'd sub nom. *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342 (Fed. Cir. 2012). For the reasons discussed above, the court will deny Mitek's motion for attorney's fees under either Section 1927 or the court's inherent power.

## V. CONCLUSION

For the foregoing reasons, the court will deny Mitek's Motion for Attorney's Fees and Expenses and will deny RMII's Motion to Strike as moot.

Dated: July 27, 2018

_____
UNITED STATES DISTRICT JUDGE